NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0404n.06

Nos. 23-3682 / 24-3831

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| SIERRA CLUB, et al., <br>     Petitioners, <br><br> v. <br><br> TENNESSEE DEPARTMENT OF ENVIRONMENT AND CONSERVATION, et al., <br>     Respondents, <br><br> TENNESSEE GAS PIPELINE COMPANY, L.L.C. <br>     Intervenor. <br><br> ──────────────────────────── <br><br> APPALACHIAN VOICES and SIERRA CLUB, <br>     Petitioners, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, et al., <br>     Respondents. | **FILED** <br> Oct 11, 2024 <br> KELLY L. STEPHENS, Clerk <br><br><br><br><br><br> O R D E R |

**Before: MOORE, CLAY, and THAPAR, Circuit Judges.**

The court delivered an order. THAPAR, J. (pp. 8–20), delivered a separate dissenting opinion.

At issue in this Order are two stay motions filed by Petitioners, the Sierra Club and Appalachian Voices, related to construction of the Cumberland Project (the "Pipeline"), a

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

proposed pipeline which would deliver gas to a methane facility in Cumberland City, Tennessee. Petitioners seek to stay (1) the Tennessee Department of Environment and Conservation's ("TDEC") order issuing a water quality certification under § 401 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, to the Tennessee Gas Pipeline Company, L.L.C. ("TGP") for construction of the Pipeline and (2) the Army Corps of Engineers' (the "Corps") issuance of a permit to TGP for construction of the Pipeline pursuant to § 404 of the CWA.

Enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251, the CWA is "the principal federal law regulating water pollution in the United States," *Sackett v. Environmental Protection Agency*, 598 U.S. 651, 657–58 (2023). The state and federal governments share primary enforcement responsibility for the CWA. *Sierra Club v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 504 F.3d 634, 637 (6th Cir. 2007). "[Section] 401 of the Act requires States to provide a water quality certification before a federal license or permit can be issued for activities that may result in any discharge into intrastate navigable waters." *PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 707 (1994). In issuing water quality certifications, states must certify that the contemplated discharge "will not violate certain water quality standards, including those set by the State's own laws." *S.D. Warren Co. v. Maine Bd. of Env't Prot.*, 547 U.S. 370, 374 (2006).

Compliance with § 401 of the CWA is a prerequisite for receipt of a permit pursuant to § 404 of the Act. *City of Olmsted Falls v. EPA*, 435 F.3d 632, 633 (6th Cir. 2006). Section 404 authorizes the Corps "to issue permits allowing the release of dredged and fill matter into the waterways subject to the terms and procedures set forth in the CWA." *Mich. Peat v. EPA*, 175 F.3d 422, 424 (6th Cir. 1999) (citing 33 U.S.C. § 1344(a)). "So-called 'section 404 permits' are given on a case-by-case basis and are issued only upon compliance with specific criteria," *Shelton v.*

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

*Marsh*, 902 F.2d 1201, 1203 (6th Cir. 1990), including guidelines promulgated by the Environmental Protection Agency ("EPA"), *Kentuckians for the Commonwealth v. U.S. Army Corps of Engineers*, 746 F.3d 698, 702 (6th Cir. 2014). In addition, the Corps must "consider the environmental consequences of every discharge it allows." *Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 269 (2009) (citing 33 U.S.C. § 1344(b)).

Petitioners and Respondents agree that TGP was required to receive both the § 401 water quality certification and § 404 permit before commencing construction of the Pipeline.[1] On July 22, 2022, TGP applied for the § 401 water quality certification from TDEC, Tennessee's "state administrative agency charged by the state legislature with supervising water quality." *Jones v. City of Lakeland*, 224 F.3d 518, 521 (6th Cir. 2000). On the same day, TGP also applied to the Corps for the § 404 permit.

TGP's applications set forth its plans to construct an approximately thirty-two-mile pipeline thirty inches in diameter across multiple Tennessee counties. The applications further identified trench excavation as TGP's primary pipeline installation method. Through that method, TGP proposed to dig a trench ranging up to eight feet in depth and five feet in width. In total, TGP anticipated that the Pipeline's proposed right-of-way traversed 149 watercourse crossings containing fifty-three streams and seventy-two wet-weather conveyances. TGP proposed using dry open cut crossing methods at 145 of those watercourse crossings and trenchless horizontal

---

[1] TGP was also required to receive a certificate of public convenience and necessity from the Federal Energy Regulatory Commission ("FERC") to construct the Pipeline. *See Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 302 (1988) ("[A] natural gas company must obtain from FERC a 'certificate of public convenience and necessity' before it constructs, extends, acquires, or operates any facility for the transportation or sale of natural gas in interstate commerce." (quoting 15 U.S.C. § 717f(c)(1)(A))). FERC issued the required certificate to TGP on August 29, 2024. Petitioners have not challenged FERC's order in this Court. *See Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010) ("The Natural Gas Act sets forth a highly reticulated procedure for obtaining, and challenging, a FERC certificate to build an interstate pipeline.").

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

directional drill crossing methods at the remaining four. TDEC granted TGP's § 401 application on July 21, 2023, and Petitioners timely petitioned this Court for review of TDEC's order on August 18, 2023. The Corps then granted TGP a § 404 permit on July 25, 2024, and Petitioners again timely petitioned this Court for review on September 26, 2024.

On September 18, 2024, Petitioners filed the instant stay motion seeking to stay TDEC's issuance of TGP's § 401 water quality certification pending our review of the petition. On September 19, 2024, Petitioners moved for a temporary administrative stay seeking "to preserve the status quo" until the Court ruled on the initial stay request. On September 26, 2024, we denied as moot Petitioners' temporary administrative stay motion following assurances from TGP that it intended to begin pipeline construction, including tree clearing and ground disturbing activities, by October 15, 2024, at the earliest. On October 4, 2024, Petitioners moved for a stay of the Corps' § 404 permit to TGP. Given the impending date by which TGP may begin constructing the Pipeline, we now consider Petitioners' remaining stay motions.

Petitioners claim that TDEC and the Corps ran afoul of the CWA, in part, by failing to consider viable water-crossing alternatives for TGP's proposed pipeline route through Tennessee, resulting in an impermissibly detrimental environmental impact from the Pipeline's construction. In particular, Petitioners argue that TDEC erred by not (i) evaluating less adverse practicable alternatives at each of TGP's proposed waterbody crossings; (ii) requiring TGP to choose the least impactful practicable rock removal method at each crossing; (iii) ensuring TGP's compliance with state water quality regulations regarding downstream effects caused by construction activities in wet-weather conveyances; (iv) considering evidence that TGP's proposed open-cut crossings would result in water quality standards violations due to sedimentation impacts; and (v) analyzing the potential water quality impact from the Pipeline's construction. In addition, Petitioners argue

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

that the Corps erred by (i) not adhering to the EPA Guidelines' presumption of practicable alternatives by assessing the feasibility of trenchless boring methods at each proposed waterbody crossing; (ii) failing to ensure TGP's compliance with the EPA Guidelines' requirement to employ the least environmentally damaging practicable alternative for rock removal; (iii) misinterpreting the scope of TDEC's § 401 water quality certification in issuing its § 404 permit to TGP; (iv) improperly relying on a permit ostensibly issued pursuant to CWA § 402, 33 U.S.C. § 1342, to assess the Pipeline's potential impact; and (v) failing to consider the cumulative effects caused by TGP's proposed multiple crossings of the same streams.

In assessing applications for stays pending appeal, this Court weighs the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Serv. Emps. Int'l Union Loc. 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (per curiam). In the course of that balancing, "[t]he party requesting a stay bears the burden of showing that the circumstances justify" the stay. *Nken*, 556 U.S. at 433–34.

At this preliminary stage, Petitioners have satisfied their burden with respect to both stay requests. As their requests demonstrate, Petitioners are at risk of considerable irreparable harm should TGP commence Pipeline construction before this Court renders judgment on their Petitions. TDEC and the Corps' CWA certifications acknowledge the irreparable nature of the Pipeline's construction. TDEC, in approving TGP's § 401 application, authorized what it characterized as

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

"permanent impacts" to 0.03 acres of wetland and 490 linear feet of stream. (Case No. 23-3682, Aquatic Res. Alteration Permit NRS 22.192, ECF No. 56-1, 7).

While these irreparable harms are not dispositive, *Nken*, 556 U.S. at 433, our analysis at this juncture must give due consideration to the harms which will transpire in the absence of a stay, *see Nwakanma v. Ashcroft*, 352 F.3d 325, 327–28 (6th Cir. 2003) (per curiam) ("[W]hen a greater showing of irreparable harm in the absence of a stay is made, a lesser showing of the likelihood of success on the merits is necessary to support a stay." (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991))). In addition, Petitioners' contentions concerning the adequacy of the Corps and TDEC's respective reviews of TGP's CWA applications "present[] serious questions on the merits," further buttressing the case for stays at this time. *Antonio v. Garland*, 38 F.4th 524, 526 (6th Cir. 2022).

The dissent disagrees—not only with our disposition of the stay motions, but also with our exercise of jurisdiction. Relying on a concurrence, *see Shrimpers and Fisherman of RGV v. Texas Commission on Environmental Quality*, 968 F.3d 419 (5th Cir. 2020) (Oldham, J., concurring), rejected by the Circuit from which it issued, *Sierra Club v. Louisiana Department of Environmental Quality*, 100 F.4th 555, 563–65 & n.6 (5th Cir. 2024), the dissent posits that we lack subject matter jurisdiction to consider Petitioners' stay request with respect to TDEC's § 401 water quality certification. In doing so, the dissent seeks to circumvent an express provision of federal law in favor of an unreasonably restricted view of federal court authority. While the CWA provides states "a significant role in protecting their own natural resources," *International Paper Co. v. Oullette*, 479 U.S. 481, 489 (1987) (citing 33 U.S.C. § 1251(b)), the Natural Gas Act squarely places within federal courts of appeals "original and exclusive jurisdiction over any civil action for the review of an order or action" of a state administrative agency "taken pursuant to

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

Federal law to issue, condition, or deny any permit, license, concurrence, or approval . . . required under Federal law," 15 U.S.C. § 717r(d)(1).  In issuing TGP a § 401 water quality certification, TDEC acted "pursuant to federal law." *Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot.*, 833 F.3d 360, 370–72 (3d Cir. 2016).  Accordingly, we decline the dissent's invitation to abdicate our expressly-granted authority to review TDEC's order.

In granting these stay requests, we are mindful that further consideration by the Court may yield additional insights which cast doubt on our initial view.  Indeed, this inherent power to issue stays pending review "allows an appellate court to act responsibly."  *Nken*, 556 U.S. at 427.  Accordingly, to provide sufficient time for this Court to consider the merits of these petitions, we grant Petitioners' motions for stay pending review.

The Court will not order the posting of a bond by Petitioners at this time, but the parties should be prepared to address the issue of the necessity of a bond at the time of oral argument currently scheduled for December 10, 2024.

The Clerk of Court is hereby ordered to set expedited briefing in case number 24-3831 so that it may be heard on the merits along with case number 23-3682 on December 10, 2024.

THAPAR, Circuit Judge, dissenting. Environmental groups have asked our court to invalidate two permits—one from Tennessee and one from the Army Corps of Engineers. The permits authorize the Tennessee Gas Pipeline to start constructing a 32-mile pipeline.

Before us now are petitioners' motions to temporarily suspend the permits during the pendency of appeal. The majority grants both stay requests. But petitioners haven't shown that we're likely to have jurisdiction over their state-law arbitrary-and-capricious claim against the Tennessee Department of Environment and Conservation. That means they haven't shown a likelihood of success on the merits of that claim.

And as for the Army Corps of Engineers' permit, petitioners haven't shown that they'll face irreparable harm absent a stay or that they're likely to succeed on the merits. I respectfully dissent.

I.

The majority takes petitioners' request for a "stay" at face value. While we may stay lower-court orders or even federal agency actions, an injunction is our only way to stop states from acting. No matter what petitioners call it, an order preventing a state agency decision from taking effect "is an injunction." *Illinois Bell Tel. Co. v. WorldCom Techs., Inc.*, 157 F.3d 500, 503 (7th Cir. 1998) (Easterbrook, J.). So if we want to order TDEC to do something, we must enjoin it—as we would any other litigant.

To obtain a preliminary injunction, a petitioner must establish both a likelihood of success on the merits and irreparable harm absent relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). And just last term, the Supreme Court emphasized that *Winter* requires petitioners to "make a clear showing" of their likelihood of success on the merits. *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1578 (2024). So, to stop the TDEC Water Quality Certification permit,

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

we must enjoin TDEC from issuing it. For us to do that, petitioners must clearly establish that they're likely to succeed on the merits.

II.

Petitioners haven't shown that they're likely to succeed on the merits of their claim. Why? In part, because they haven't shown that our court is likely to have subject-matter jurisdiction.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court may exercise jurisdiction only when both a statute and the Constitution authorize it. *Id.* In fact, we must presume that petitioners' suit "lies outside [the] limited jurisdiction" that we possess. *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799)). The burden to overcome this presumption rests with petitioners, since they're the ones invoking our judicial power. *Id.*

Subject-matter jurisdiction is "relevant to [the] likelihood of success" inquiry. *Arizona v. Biden*, 40 F.4th 375, 383 (6th Cir. 2022) (Sutton, C.J.). In *Arizona v. Biden*, various states had obtained a preliminary injunction against the implementation of a federal agency memorandum. *Id.* at 380. On appeal, we reversed the preliminary injunction after holding that the states weren't likely to succeed on the merits of their claims. *Id.* One reason why? We weren't sure whether the states had Article III standing. *Id.* at 387. Notably, we didn't resolve the standing question one way or another, even though standing is a question of subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (2012). Instead, we explained that our provisional doubts about standing meant that the states hadn't established a likelihood of success on the merits. *Arizona v. Biden*, 40 F.4th at 387. *Arizona v. Biden* thus teaches that subject-matter jurisdictional issues factor into our likelihood-of-success analysis.

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

Just as in that case, the petitioners here stumble over a subject-matter jurisdictional hurdle in their effort to establish the likelihood of success on the merits. The statutory subject-matter jurisdictional analysis proceeds in two steps. The first step is to determine whether petitioners' cause of action comes from state law or federal law. Here, petitioners assert a state-law cause of action. No federal law gives petitioners a right to bring their arbitrary-and-capricious claim against TDEC. Petitioners can't find a cause of action in the Natural Gas Act, the Clean Water Act, or the Administrative Procedure Act. So their cause of action must come from Tennessee state law.

The second step is to determine whether both a federal statute and the federal Constitution authorize us to exercise jurisdiction over this state-law cause of action. This is where petitioners come up short in their request for preliminary relief. The difficulty? They haven't demonstrated a likelihood that any federal statute authorizes us to hear their state-law claim against non-diverse parties in federal court. Although petitioners point to a jurisdictional provision of the Natural Gas Act, they don't explain how that provision satisfies the Supreme Court's clear-statement rule for federal statutes that effect a significant intrusion on the historical sovereign powers of the states.

A.

The first step in the statutory subject-matter jurisdiction analysis is to identify the source of petitioners' cause of action. Petitioners' underlying claim is that TDEC acted arbitrarily and capriciously when it granted a water-quality permit to the Tennessee Gas Pipeline. But what statute gives them a right to judicial review of this claim?

Not the federal Natural Gas Act. *See* 15 U.S.C. § 717r(d)(1). That statute doesn't give petitioners a cause of action to challenge the procedures that a state agency followed in issuing a certificate. *Shrimpers and Fishermen of RGV v. Texas Comm'n on Env't Quality*, 968 F.3d 419, 426–27 (5th Cir. 2020) (Oldham, J., concurring). To be sure, the Natural Gas Act contains a

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

provision that purports to vest our court with "original and exclusive jurisdiction" over "any civil action" challenging certain orders of state agencies. 15 U.S.C. § 717r(d)(1). (More on that below.) But that provision doesn't give anyone "a right of review," "specify who can be sued as a defendant," or "specify a standard of review." *Shrimpers & Fishermen*, 968 F.3d at 426 (Oldham, J., concurring). Just like the general federal-question jurisdiction statute, *see* 28 U.S.C. § 1331, the Natural Gas Act's jurisdictional provision simply confers authority to hear certain causes of action that "[p]etitioners might otherwise have." *Shrimpers & Fishermen*, 968 F.3d at 427 (Oldham, J., concurring).

Nor does the federal Clean Water Act give petitioners a cause of action. To be sure, TDEC issued the challenged order under section 401 of that statute, which requires companies seeking approval of a pipeline to provide the Federal Energy Regulatory Commission with a state-issued water-quality certificate. 33 U.S.C. § 1341. And the Clean Water Act provides a cause of action "against any person" alleged to be in violation of either (a) an effluent standard under that statute or (b) an order issued about such a standard. 33 U.S.C. § 1365(a)(1). But that's not the claim petitioners have brought. They don't allege that TDEC violated an effluent standard or an order issued about such a standard. Instead, they allege that TDEC violated various administrative procedural requirements, such as the agency's duty to consider relevant evidence and its duty to explain the conclusions it reached. So while the Clean Water Act does provide a cause of action for some claims to relief, it doesn't provide one for the type of claim that petitioners advance.

Finally, the federal Administrative Procedure Act doesn't provide petitioners with a cause of action. By its own terms, the APA doesn't apply to state agencies. 5 U.S.C. § 701; *see also Del. Riverkeeper Network v. Sec'y of Pa. Dep't of Env't Prot.*, 870 F.3d 171, 179 n.8 (3d Cir. 2017) (explaining that the federal APA "does not cover state agencies"). Section 701 of the APA

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

defines "agency" to mean "each authority of the Government of the United States." 5 U.S.C. § 701(b)(1). But TDEC is an authority of the government of Tennessee, not the government of the United States. So the provision of the federal APA that imposes a duty on agencies not to act arbitrarily doesn't apply here. *See* 5 U.S.C. § 706. Petitioners therefore can't invoke the APA's right of review to challenge TDEC's order. *See* 5 U.S.C. § 702.

Petitioners' only cause of action comes from Tennessee's state administrative procedure act. That statute gives a right of judicial review to anyone "aggrieved by a final decision" of a state agency. Tenn. Code Ann. § 4-5-322(a)(1). It authorizes a reviewing court to remand, reverse, or modify a state agency's decision if the underlying "administrative findings, inferences, conclusions, or decisions" were "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Code Ann. § 4-5-322(h), (h)(4). This is exactly the type of claim petitioners are advancing. Thus, it is this Tennessee law—not the federal APA, or any other federal statute—that gives petitioners a right to judicial review of their claim that TDEC acted arbitrarily and capriciously.

(Actually, the question might be even more complicated. Although the parties don't mention it, a Tennessee regulation apparently requires petitioners to direct their appeal of TDEC's order to Tennessee's Board of Water Quality, Oil, and Gas "pursuant to T.C.A. § 69-3-105(i) and § 69-3-110" within 30 days after public notice of the permit's issuance. TN ADC 0400-40-07.04(9)(a), (e). In turn, section 69-3-105(i) requires that petitioners "first exhaust their administrative remedies before seeking judicial review of TDEC's decision." *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 514 (Tenn. 2013). But petitioners don't say whether they took this step. Petitioners tell us they petitioned TDEC for a stay, but they say nothing about whether they appealed TDEC's order to the Board of Water Quality, Oil, and Gas before seeking

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

judicial review. Doc. 64 at 2 n.1. If this regulation means what it says, then petitioners might have forfeited their right to judicial review of TDEC's order by failing to petition the Board of Water Quality, Oil, and Gas.)

B.

So how can petitioners press this Tennessee-centered claim in federal court? Not under the general federal-question statute, since this case presents no federal-law issue. *See* 28 U.S.C. § 1331. Nor have petitioners alleged that diversity jurisdiction would be proper.

The only potential basis for statutory subject-matter jurisdiction is the following provision of the Natural Gas Act:

> The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval (hereinafter collectively referred to as "permit") required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.).

15 U.S.C. § 717r(d)(1).

Here, we're asked to review an "order" of a "State administrative agency" (TDEC) that was "acting pursuant to federal law" to issue a "permit" that is "required under Federal law." *Id.* So you might think that the statute grants us "original and exclusive jurisdiction" to hear this action. *Id.*

But did Congress really give federal courts the power to hear state-law claims alleging that a state agency flouted state procedural law? *Shrimpers & Fishermen*, 968 F.3d at 427 (Oldham, J., concurring). The difficulty is that the statute doesn't specify what kind of challenges we're authorized to review. When Congress enacted this statute, did it presuppose that federal courts

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

would be asked to hear claims that a state agency's order violated *federal* law? Or, did Congress purport to confer jurisdiction to review a state order's compliance with *state* law? On its face, the statute doesn't say. It's silent on the scope of our jurisdiction. But since whatever jurisdiction we have is "exclusive," a holding that we have jurisdiction here would mean that Congress has affirmatively divested state courts of the ability to correct a state agency's failure to comply with state procedural law.

If Congress intended to sanction such an extraordinary intrusion on this traditional power of the states, we would expect a clear statement to that effect. Indeed, Congress must enact "exceedingly clear language" if it seeks to "significantly alter the balance between federal and state power." *Sackett v. EPA*, 143 S. Ct. 1322, 1341 (2023) (citation omitted); *see also Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991) (explaining that "Congress should make its intention 'clear and manifest' if it intends to pre-empt the historic powers of the states" (citation omitted)). This "requirement of [a] clear statement" ensures that Congress "has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) (quoting *United States v. Bass*, 404 U.S. 336, 349 (1971)).

The power of state courts to control state administrative agencies "lies at the core of traditional state authority." *See Sackett*, 143 S. Ct. at 1341. In fact, the traditional relationship between a sovereign's courts and its agencies is so close that the Supreme Court has sometimes conceived of administrative agencies as "adjuncts" to the courts, analogizing agencies to special masters and commissioners that help courts with fact-finding and other determinations. *Crowell v. Benson*, 285 U.S. 22, 51 (1932); *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 77 (1982) (plurality opinion) (describing *Crowell v. Benson* as a "case[] in which we approved the use of administrative agencies" as "adjuncts" to courts). The Tennessee legislature has

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

prescribed a detailed scheme for judicial review of agency action, which normally takes place in the state's chancery courts. Tenn. Code. Ann. § 4-5-322(b)(1)(A). For us to usurp the Tennessee courts' authority to control their agencies' compliance with state procedural law would amount to a significant intrusion on state power. In this very case, the Tennessee courts would have to stand idly by as we applied the state-law arbitrary-and-capricious doctrine that those courts elaborated in cases such as *StarLink Logistics, Inc. v. ACC, LLC*, 494 S.W.3d 659 (Tenn. 2016), and *Taylor v. Bd. of Admin.*, 681 S.W.3d 751 (Tenn. 2023).

A hypothetical will provide more reason to question whether Congress really intended to give federal courts jurisdiction over these types of claims. Imagine if these petitioners had challenged TDEC's order on the sole ground that the commissioner of TDEC had no authority to exercise the functions of his office because he had been unlawfully appointed. Would a federal court of appeals need to construe the relevant state statutes and state constitutional provisions to determine whether the state had complied with its own system for appointing governmental officers? If so, that would require the federal courts to make judgments about Tennessee's governmental structure and political processes. In all likelihood, Congress never imagined that result. We would expect a clear statement before imputing to Congress a desire to cause such a burdensome intrusion on the sovereign powers of the states. *Will*, 491 U.S. at 65 (requiring assurances that Congress "has in fact faced[] and intended to bring into issue" the anomalies that would result from a federal exercise of traditional state power). Without that clear statement, it seems far more likely that Congress simply meant to grant the courts of appeals exclusive jurisdiction only over federal-law challenges to state agency orders.

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

C.

Finally, even if petitioners could show that the Natural Gas Act gives us statutory subject-matter jurisdiction over "a purely state-law dispute," petitioners would still "run headlong into a constitutional question." *Shrimpers & Fishermen*, 968 F.3d at 428 (Oldham, J., concurring). Regardless of whether a statute purports to authorize jurisdiction, federal courts can only hear cases that fall within the "judicial Power" of the United States. U.S. Const. art. III, § 2.

As relevant here, petitioners need to show that their claim arises under the "laws of the United States" within the meaning of Article III. *Id.* To be sure, this is a low bar. The Constitution allows us to hear this case so long as it contains some "ingredient" of federal law. *Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 823 (1824). The fact that TDEC issued its certificate pursuant to section 401 of the Clean Water Act might be enough to satisfy the Constitution's demand for a federal ingredient. But that conclusion is far from obvious. *Shrimpers & Fishermen*, 968 F.3d at 428 (Oldham, J., concurring) (explaining that this constitutional question is "difficult"). In fact, scholars have noted that a similar provision of the Clean Air Act "push[es] against the limits of Article III." Richard H. Fallon, Jr., et al., *Hart & Wechsler's The Federal Courts and the Federal System* 805 (7th ed. 2015). In this emergency posture, "we cannot simply assume the answer" to this difficult question. *Shrimpers & Fishermen*, 968 F.3d at 428 (Oldham, J., concurring). And petitioners haven't even argued, let alone convinced us, that they would prevail. In sum, the constitutional issue provides yet another reason to doubt that petitioners are likely to succeed on the merits of their underlying claims.

\*   \*   \*

Of course, these provisional doubts about jurisdiction have arisen in an emergency posture. Hearing this appeal in the normal course might vindicate these doubts. Or it might prove them

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

unfounded. Caution is particularly necessary here, given that the parties didn't make arguments about—let alone fully brief—the issue of our jurisdiction. Instead, our court has been forced to ponder these issues sua sponte. For now, however, these questions about our subject-matter jurisdiction provide enough reason to doubt that petitioners are likely to succeed on the merits of their claim. *Arizona v. Biden*, 40 F.4th at 387.

III.

I also respectfully dissent from the majority's decision to stay the permit issued by the Army Corps of Engineers. A stay is "an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). Thus, at a minimum, petitioners must show that a stay is necessary to avert irreparable harm. *Id.* at 432. Petitioners must also make a "strong showing" that they are "likely to succeed on the merits." *Id.* at 434. Both these requirements are indispensable. *Id.* at 435 (requiring a petition to "satisf[y]" the factors of likelihood of success and irreparable harm); *id.* at 438 (Kennedy, J., concurring) ("When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other."); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (same).

Here, a stay is unwarranted for two reasons. First, petitioners aren't at risk of irreparable harm from the Corps permit. The majority's decision to enjoin the TDEC permit ensures that the pipeline won't be constructed during the pendency of this appeal, thus eliminating petitioners' claim to irreparable harm. Second, even if petitioners could show irreparable harm, they haven't "made a strong showing that [they are] likely to succeed on the merits." *Nken*, 556 U.S. at 434 (citation omitted). The parties have raised difficult questions about the merits that leave petitioners with uncertain prospects for success. Of course, we don't need to conclusively decide the merits

at this stage. But the majority's bare assertion that petitioners have raised "serious questions" about the merits, without any supporting analysis, doesn't establish that petitioners have made a "strong showing" of their likelihood of success. Order at 6.

A.

In order to obtain a stay, petitioners must show that they will suffer irreparable harm without one. *Nken*, 556 U.S. at 432. Demonstrating irreparable harm is "necessary" to obtain a stay. *Antonio v. Garland*, 38 F.4th 524, 526 (6th Cir. 2022). A mere "possibility of irreparable injury" is not enough. *Nken*, 556 U.S. at 434 (citation omitted).

Here, in light of the majority's decision to stay the TDEC permit, petitioners will not suffer any irreparable harm if the Corps permit is allowed to remain in place. The majority's invalidation of the TDEC permit means that TGP won't be able to start work on its proposed pipeline during the pendency of this appeal. *See* 33 U.S.C. § 1341(a) (requiring TGP to provide FERC with "a certification from the State" that any discharge into the navigable waters will comply with state water quality standards). Because the TDEC permit is necessary to obtain federal approval to begin the project, TGP is hamstrung without it. We therefore have no need to exert our judicial power over the Corps in addition to TDEC.

B.

But even if petitioners could show irreparable injury, that's not enough to justify a stay of the Corps permit. A stay "is not a matter of right, even if irreparable injury might otherwise result" to the petitioners. *Nken*, 556 U.S. at 433 (citation omitted). For that reason, petitioners must also make a strong showing that they are likely to succeed on the merits. *Id.* at 434. "It is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* (citation omitted). "More than a mere possibility" of success is required. *Id.* (cleaned up).

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

Petitioners haven't made a strong showing that they are likely to succeed on the merits of their claim that the Corps acted arbitrarily and capriciously in granting a permit to TGP. Notably, arbitrary-and-capricious review under section 706 of the APA is "deferential," and we may not "substitute [our] own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 114 S. Ct. 1150, 1158 (2021). Our review "simply ensures that the agency" has "reasonably considered the relevant issues and reasonably explained the decision." *Id.* Indeed, a court should "uphold a decision of less than ideal clarity" whenever the agency's rationale "may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (citation omitted).

Here, petitioners haven't shown that they are likely to succeed on the merits. The parties' briefing raises difficult questions about petitioners' claims:

- What level of deference applies to the Corps' factual determinations about the costs of conventional boring? Did the Corps have an obligation to compare horizontal directional drilling with conventional boring?

- Can the Corps, consistent with its obligation to select the least environmentally damaging practicable alternative for water-body crossings, prospectively authorize multiple ways to cross waterbodies, explain that one method requires prior authorization, and then allow the company to use the most practicable of the four methods for the issue it encounters?

- Can Sierra Club show that the Corps' action was arbitrary and capricious if it doesn't establish that harms will flow from any of the waterbody-crossing methods approved by the Corps?

- Petitioners argue that the five rock-removal methods have disparate environmental harms. But TGP says that the different methods all have the same effect on sediment releases. Can these both be true? And if they aren't both true, how do we weigh a method that causes more damage to the environment than others but is only slightly more practicable? Could that option be the "least environmentally damaging practicable alternative?"

- Do Tennessee and the Corps have to agree on whether Tennessee's initial certification permit included after-stream crossings? If not, does the principle of harmless error apply? If Tennessee could waive certification, could the Corps simply consider that the after-added sites were properly certified?

Nos. 23-3682/ 24-3831, *Sierra Club, et al. v. Tenn. Dep't of Env't & Conservation, et al.*

- Can the pipeline even be subject to a NPDES permit? Petitioners suggest it can't be. Mot. for Stay at 19. But the Corps suggests that "the project is subject to NPDES permit requirements." Corps Response at 27. If the project is subject to a NPDES permit, did the pipeline ever receive such a permit? If so, do petitioners object to the permit? If the project isn't subject to a NPDES permit, was the Corps' apparent reliance on the NPDES permitting scheme arbitrary?

- Did the Corps need to address cumulative crossings for single streams, or was more general discussion of cumulative impact sufficient? If the Corps did need to address cumulative crossings, was the Corps' discussion of stream channel isolation sufficient to meet this requirement?

In light of these unresolved questions, petitioners haven't established that they are likely to succeed on the merits of their claims. Of course, we've only had about 24 hours to consider the fully ripe stay motion. For that reason, the majority's reluctance to resolve the merits in an emergency posture is understandable. But the point is that petitioners haven't established a strong showing of success on the merits. They might eventually prevail; they might not.

Ultimately, our disposition of petitioners' request to stay the Corps permit is academic. The project won't go forward during appeal, given the majority's decision to stay the TDEC permit. But hopefully, a full round of merits briefing and oral argument will help us answer these difficult questions about the Corps' process.

\*      \*      \*

I respectfully dissent from both stays.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*
_____
Kelly L. Stephens, Clerk

- 20 -